The next case is Smith v. Dodge. Good afternoon. This is Annette Hesapetus arguing for the Plaintiff's Appellant. In this case, respectfully, the District Court erred in granting summary judgment. I just wanted to preliminarily synthesize certain operative facts. I know the Court's very familiar with the record, but we have on this record that the Plaintiff profited an affidavit stating that he submitted two grievances, one on the 22nd of September, one on the 29th of September. When he did not hear back from the IG office, he sent in a letter of October 15th with what he labeled as carbon copies of grievance one and grievance two. The defendant in this case, in denying his grievance, only proffered at page 818 of the record the carbon copy of one of the enclosures to the October 15th letter, the September 29th did not proffer rebuttal explaining or refuting what the Plaintiff had attested to in his affidavit that was prepared without the assistance of counsel because of the short time frames. And that turns this case into it's more than a case where an inmate is simply saying, I submitted the grievance timely, but I don't have, you know, how am I supposed to prove it? Now, turning to that point, I would state that Hayes and Dickinson reflected this court's recognition that the defendants created the rules of play, so to speak. The defendants control the process. In this case, and this case presents an opportunity for this court to view that process in the context of the Hayes and Dickinson ruling. The defendant's rule of 701.5A1 says that a grievance is made when it is submitted to the clerk. How is it submitted to the clerk? When a corrections officer works it through the process, the defendants control entirely about which no one has any control over except the defendants. So the defendants created a rule that places them in complete control of whether, if at all, a grievance is received by the IG. And then to all the defendants did to make out their burden was state that we received this one grievance, it was untimely, it was returned, failure to exhaust administrative remedies. Now, Mr. Waters proffered an affidavit explaining what the process of transmission to the IG's office, but nowhere is there an explanation of why or how long it should take for someone in SHU to submit a grievance because he had no access to a lockbox and for it to get to the IG's office. There is no explanation or attestation that it was impossible for anything to be lost, misdelivered or late. Respectfully, this is one of the reasons why the plaintiff is appealing here. The defendants created a rule to control the process and they don't need to do more. The grievance did not arrive at the IG's office earlier. And turning to those specific issues, the court erred in first saying that the plaintiff failed to raise the question of facts because he did not present evidence that he actually mailed the grievance on the date of the grievance. Impossible. Unless the state, unless the defendants decide to change their rule to state that a grievance is made when it is placed in the custody and control of corrections and perhaps defendants time or number stamp each grievance upon receipt, the plaintiff is going to have no evidence to prove that he sent it on that date. My client was in SHU. He had no access to a lockbox. He gave it to a CO. There was a grievance. I mean, I hear your argument. There were other steps he might have taken that he didn't take, your adversary says. So there was a grievance supervisor who tours the SHU at least once a week. And he didn't put in his affidavit. I reached out to that person and said, what's going on? I haven't gotten any response from you guys. And he could have filed a grievance, as I understand it, grieving the determination that this grievance was untimely filed. He could have asked for an extension of time. How do all those other background, I mean, are those facts relevant to the assessment we should make? With all due respect, no. My client has indicated that he placed this in the custody of corrections and until the defendants prove that they abided their rules, or at least create rules that obligate them to timely get a grievance to the IG office. Their rules don't even require them to do that. If you look carefully at Mr. Waters affidavit, he says nothing about how long it's expected to take or that it was impossible for my client's grievance to take until October 22nd, if my client had transmitted it, in fact, on September 22nd. There's nothing there. So, my client should not have to do more until the defendants establish that they did not fail in their process and that they did not cause the misdelivery and the late delivery of grievances. Recall again, the original grievances were never received by the defendants. The carbon copy was provided in an October 15th letter that the defendants didn't produce, and they did not produce the carbon copy of the first grievance that was filed. So, I would submit my client's done everything he's supposed to do. The defendants have placed them, they're the fox in charge of the henhouse here, and the inmate should not have to do more than he's already done. He complied with the rules. If the defendants think that my client should provide evidence, or as the district court said, to show when he sent it, then the defendants should implement a process by which that can be determined. A numerical and date stamp, for example, that would track the timeliness of grievances and change the rule to require that it's received when it's placed in the custody of corrections, because they're the ones that control the entire process. Well, Ms. Hesopidas, didn't he say when he submitted it to the testimony as to when he attempted to file by giving it to the corrections officer? Yes. I'm sorry if I was unclear. I was trying to respond to the question about whether or not he should have used other measures when he did not receive a response, and I submit that he did not need to do more than he already had. You're saying so long as he submitted a grievance, he doesn't have to submit it. He actually submitted it twice, according to his testimony, but he doesn't have to do it three times by also availing himself of a different means of delivery. Is that your point? Yes, and that the district court erred in holding my client to the obligation of demonstrating that he in fact placed it and mailed it, so to speak, on the date of the grievance. The court held him to that burden, but that's impossible to prove. The court also indicated that my client had failed to prove any exception to the exhaustion requirement because he did not identify the corrections officer who had taken the grievance. The rules don't require that, and his affidavit that he placed it into the custody of corrections on the date that he indicated should have been enough, particularly since the defendants are in control of the process. They knew who was on duty that day. They knew who was in charge of doing the rounds, and I again note that the defendants made no attempt in their reply to address the factual statements of Mr. Smith. They didn't dispute them by any means. The counsel proffered a response legally, arguing that the affidavit was insufficient to raise the question of fact. Finally, the court indicated that my client failed to prove that he was thwarted in the process in any way. I submit to you that my client's explanation, which is pretty detailed, indicated and explained why he sent out that September 29th grievance, which restated the allegations of the first one. He indicated that someone told him, you know, sometimes these things don't make it all the way through. Why don't you send in another one? And then when he hadn't heard, out of an abundance of caution, he sends a letter on October 15th with carbon copies, and the only thing that's produced here is one of the carbon copies. So I submit that the fact that after all of my client's efforts, the only thing that's produced is one of the enclosures to the October 15th letter raises the question of fact, whether or not he was thwarted in the process. I apologize. I forgot to turn on my timer when I commenced the argument. You reserved three minutes of rebuttal time. Thank you. And we'll hear from Mr. Ginsburg. May it please the court. Summary judgment for failure to exhaust should be affirmed for two separate reasons. First, plaintiff was not thwarted by machination, misrepresentation, or intimidation from filing a timely grievance in the first instance. And second, as the chief judge's questions pointed out in the opening round of the argument, in any event, the follow-up remedy plaintiff should have invoked upon being notified that his grievances had not been timely filed. Namely, the remedy of grieving the alleged thwarting was not indiscernibly opaque. Can I just ask you about that? Because I'm finding this perplexing. I mean, is your argument that it is not enough to put, I mean, his affidavit says I gave, put two grievances into the mail for pickup and saw one of them picked up. And since these rules say that the time is not filed until you guys stamp it, it seems like just based on those facts, he did everything he could to exhaust. So what am I missing? What else was he supposed to be doing? Well, he might have done everything he could to try to file that group, that time, that grievance in a timely manner in the first instance. But here, and unlike in the Williams case that my friend on the other side cites in his brief petition, the plaintiff was notified that his grievances had not been timely filed. And upon receiving that notification, there was another fallback remedy, another available remedy that by the terms of the PLRA, plaintiff had to exhaust. And that remedy is the grieving of the alleged thwarting. Well, Mr. Ginsburg, excuse me, I'm puzzled by that. I thought in Williams itself, there was an argument of that sort. And the court sort of brushed that aside because it wasn't clear that if you filed such a grievance, that would do anything to reactivate the prior grievance. That's not a way of exhausting your initial remedies with respect to your first grievance. That's a separate grievance. It is a separate grievance. I want to in Williams because the court decided that that was not an available remedy in light of what it called the extraordinary circumstances of that case where Mr. Williams' grievance was both unfiled, like plaintiff's here, but also, and very importantly, unanswered. In other words, Mr. Williams was completely at sea. In real time, he had no idea what was happening. The present case is quite different. The IGP supervisor answered plaintiff in October 2015, indicating that the grievances had not been filed. Plaintiff then in his own words, realized 100% that he had been thwarted. So unlike Mr. Williams, plaintiff knew that he had experienced an adverse event, namely the non-filing of his original grievances, allegedly because of this thwarting, and he knew what action to request as relief in a subsequent grievance against that thwarting. Well, yes, but excuse me, if he filed, let's just follow this out. So if he filed a grievance saying, I have reason to believe that the corrections officer to whom I gave my grievance about this physical altercation, basically did sewer service. Instead of delivering it to the grievance committee, he tossed it in the trash can. Now, if then there's a hearing and there's a process and whatever, first of all, he may lose on that because it's not so easy to prove what the Is he just now entitled to some relief for whatever the officer did to him? Well, he is entitled to some relief for whatever the officer did to him, but in the grievance document itself, as is outlined in 701.5 of the regs, he would indicate the action he wants, the relief that he wants to request. And I would imagine in that case, part of the relief is deemed my original grievances timeless. And is there anything that says he'd be entitled to that? Well, I mean, I'm not, there's nothing that would entitle him. I'm just trying to understand why filing a separate grievance about a separate abusive action should be construed as part of the process akin to exhausting your appellate remedies of filing your first grievance. The whole point of the second grievance is the first grievance was thwarted. Exactly. And so that second grievance gives docs, it gives the docs grievance process an opportunity to work its way through and investigate this thwarting. And, you know, again, as in any case, the plaintiff might not get all the relief he or no matter what. And is there, is there anything akin to the description of the appellate remedies, which I think are pretty clear that you have to do these things in order to be, to exhaust your remedies. Is there anything akin to that, that says you should be, this is what you should do if you think that the officer has failed to deliver something that you handed to him? Well, there's nothing in that specific context, just like there isn't a specific line item in the regs for assault or excessive force or the like, but in 701.2 sub e, the reg state that a proper subject of grievances include, include quote, employee misconduct. No, I get that. I get that. But is there anything that says that that is part of that filing a grievance of that kind is part of the process of exhausting a grievance? Well, I don't think there's anything in the regs that, that does that sort of handholding, but simply because it might not be maximally spelled out in all gory detail does not make it so prohibitively opaque that no ordinary prisoner could discern or navigate it. And notably here, I mean, petitioner never asserted in the district court in any legal or factual submissions that he in fact found the process of grieving the alleged thwarting to be confusing. We just know he didn't do it, but he didn't even subjectively allege any confusion. So that should take him out of Williams right there. And again, I don't know why we should consider it an aspect of exhausting your remedies to file a separate grievance about separate misconduct, let alone why he should have thought that. He should have thought that because it was another available step that could have operated to get the relief he wanted. You have to exhaust all administrative remedies as are available, not just all administrative remedies as might be obvious in the first instance. And one remedy that was available as is available in any case of misconduct and asking for appropriate relief. But even if the court is not with us on the opacity argument, again, we don't even think the opacity argument that the plaintiff raises is preserved. But going to the first issue, that there's no evidence of thwarting in the first place. Remember, the evidence that's in the record here might suggest that there was some problem with mail delivery, but mail irregularity without more does not suggest the sort of intentional obstruction that Ross requires in order for a finding of thwarting, which is plaintiff's argument, as I understand from the brief. What do you think we should infer? If his testimony is believed, and I suppose we have to believe it for purposes of a summary judgment motion, if it's believed that he handed the mail, in quotes, to a corrections officer, and the corrections officer's responsibility was not to take it to a U.S. Postal Office, right? His responsibility was to take it upstairs or down the hall or wherever to the office of jury, right? And so he hands it to the corrections officer. And that's the last anyone ever hears of this document. Now, what should we infer? What could a reasonable person infer happened in that circumstance? Without more, a reasonable person might infer that perhaps the officer just negligently fell down on the job in this case-specific circumstance. And that would have been the easiest thing in the world for the Supreme Court and Ross to say is a species of reasonable. You don't think a reasonable juror could conclude that if this was handed to a corrections officer who was part of a unit where the alleged abuse had recently happened, and that corrections officer somehow didn't deliver it down the hall or upstairs or somewhere within the prison to the office of the person who's supposed to get it, that no reasonable juror could infer on a preponderance of the evidence standard that he deliberately did not deliver it? I don't think that, Your Honor. And I would contrast that with the case that plaintiff cites in his favor, the Coleman versus Nolan case out of the Northern District in 2018. That is the kind of evidence that permits this sort of inference. In that case, the inmate told the CO that he was going to write a grievance against him. And the CO thereupon issued the inmate a misbehavior report and said, see what writing just got you. And then thereafter, the inmate submitted a grievance, but it never reached the grievance office. That kind of evidence of animus or scienter or intentionality connected to the grievance process that was present in the Coleman case that my friend relies upon is absent here. And that's why there cannot be a reasonable inference of thwarting in the first instance. And I see my time is running short, so I would just say that even if, again, to finish where I started, even if the plaintiff's initial grievances were thwarted, the court should still affirm because he failed to grieve that alleged thwarting and request as relief on that grievance that the original grievances be deemed timely and that fallback remedy was not so opaque that no ordinary prisoner could discern or navigate it. Can I just ask a question about that? What if instead of grieving, he had just asked for the extension of time? I'm sorry, Your Honor, I didn't mean to interrupt you. Yes, no, go ahead. No, please go ahead. I think I didn't get all of your question. Well, wasn't it possible for him when he gets notice, he still had time, he was still within the 45-day window, so he could have said, I need an extension? Well, candidly, I'm not sure if the facts permit that in a summary judgment posture. We do know that he received a letter, it seems that he received a letter, the documentary evidence suggests that he received a letter on October 22nd, which would have been within the 45-day limit, which means requesting an extension, a sort of retroactive extension, would have been another available remedy, which is not exhausted. But then if you go to plaintiff's affidavit, he says in his affidavit that he didn't hear from the grievance office, despite that letter being dated within the 45-day period, that he didn't hear from the grievance office until outside the 45-day period. Yeah, but that's why the remedy of grieving, the alleged thwarting, would still work. The 45-day limit only restricts the authority of the IGP supervisor to unilaterally grant an extension. It does not restrict the ability of the IGRC as a whole, or the superintendent, and to the extent of a harassment grievance, to grant a retroactive extension of relief, grant a retroactive extension as relief for a grievance alleging that an earlier grievance attempt had been thwarted. And on that ground, even if there's an inference of in the first instance, because there's no opacity as to the fallback remedy here, this court should affirm. We'll hear rebuttal. Thank you. Counsel has indicated at page 891 that my client indicated that he became aware that his grievances had not been received, and has acknowledged that as evidence before the court. That established that defendants did not satisfy their obligations. And now the rub here is that the defendants don't have a rule that indicates the consequences or the timeline for their transmission of grievances from an inmate to the IG office. And despite the fact that the defendants have chosen not to hold themselves accountable through regulations, they are asking this court to hold that my client had grieved the defendant's failure to receive the first two grievances, and to deny the October 15th transmission of the grievance as untimely, that he should have known that. Now this falls in line with Hayes and Dickinson, where the court held that if the plaintiff, the inmate, follows the rules of the process, and the defendants don't follow their own rules, the plaintiff has exhausted his remedies. The defendants would seek to hold my client to an obligation that was rejected by this court in Hayes and Dickinson. He knew and it's been acknowledged that his first two grievances had not been received. So he did not need to establish to the IG that someone had placed his grievances in the circular bin. He had exhausted his remedies, period. And there was no notification in these regulations that my client should have known that he should have grieved the thwarting. There is nothing here anywhere that imposes such an obligation, let alone notifies them of their responsibility. He did what he was supposed to do. The defendants did not rebut his evidence in response. And again, I would emphasize that it is the defendants who create the rules. The defendants have no rules in place that obligate them to transmit grievances or any sort of communications within the system within a certain timeframe. My client shouldn't be obligated to continue to try monitor the mail process within the system. In Coleman, that is the salient portion of the determination that I cited to the court, that the inmate is not in a position to monitor the sorting and the transmission of mail. He can't be held responsible for it. And the defendants have created no rules or oversight for themselves. And in this case, they were not even obligated to make that a prima facie case by demonstrating that they did nothing to interfere with my client's transmission of the grievances. I thank the court for its time and attention. Thank you very much. We'll take the matter under advisement. Thank you both for your arguments. Very helpful. Thank you. That's the last case to be argued today. And we'll take Viva Shift v. PayPal on submission. I'll ask the clerk to adjourn court. Court is adjourned.